CASE 57—ACTION BY WAYNE McCOY AGAINST THE MAJES-
    TIC COLLIERIES CO. FOR DAMAGES FOR PER-
    SONAL INJURIES—March 3.

# Majestic Collieries Co. v. Bradley.

Appeal from Pike Circuit Court.

A. J. KIRK, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirm-
ed.

1.  Master and Servant—Negligence of Fellow Servant—Assump-
    tion of Risk—A servant does not assume the risk of a fellow
    servant's negligence if the master was negligent in selecting
    and employing a laborer incompetent to do the work he was
    put to do.
2.  Master and Servant—Employment of Coal Mine Foreman—
    Statutory Regulations—The Code of West Virginia provides
    for an elaborate system of mine inspection and regulation, for
    the proper ventilation of coal mines, and the promotion of the
    health and safety of workmen.  It requires, by Code. Supp.
    1907, Section 410, that the operator or agent of a mine shall
    employ a competent or practical inside overseer called a mine
    foreman, who shall be an experienced coal miner, or any
    person having five years' experience in a coal mine, and specifi-
    cally prescribes his duties.  Held, that the statute intended
    that only a competent, practical mine foreman should be em-
    ployed, regardless of experience; and if he was not known to
    be so, it might be assumed that he was competent till his em-
    ployer was notified to the contrary, and if he was known to be
    incompetent, his employment was negligent, no matter what
    his experience.
5   Master and servant—Action for Injuries—Pleading—Incom-
    petency of Foreman—In an action by a coal miner for injuries
    based on the negligence of his foreman, who was claimed to
    be incompetent, it was sufficient to allege that he was incom-

petent, and known by defendant to be so, and it was not neces-
sary to allege that he had not had five years' experience
which the statute authorizes an employer to assume as suf-
ficient till he knows the contrary, but does not absolutely
require it if the foreman is otherwise competent.

4.  Pleading—Defects and Objections—Aider by Verdict—A verdict
    in favor of a coal miner, suing for injuries claimed to have
    been caused by the negligence of an incompetent foreman
    employed by defendant in violation of law, cured the error, if
    any, in failing to charge that the foreman had not had a cer-
    tain number of years' experience.

5.  Master and Servant—Injuries to Miner—Assumption of Risk—
    Negligence or Incompetency of Foreman—A miner does not
    assume the risk, unless obviously perilous, arising from failure
    of his foreman to furnish posts and perform duties imposed by
    statute for his safety, and this is particularly true when such
    failure is due to the foreman's incompetency.

6.  Master and Servant—Injuries to Miner—Contributory Negli-
    gence—A miner suing for injuries caused by a falling roof, due
    to the lack of suitable posts, did not himself examine the roof
    on returning to the room after firing the last shot in blasting
    coal from its face, but his brother, who was his "buddie," and
    with him at the time, did examine it by sounding it with his
    pick, and it gave them no warning of its dangerous condition.
    Held, that this did not amount to contributory negligence.

7.  Master and Servant—Injuries to Coal Miner—Contributory Neg-
    ligence—Question for Jury.—Whether it was contributory neg-
    ligence was a question for the jury.

BUTLER & MOORE and STROTHER, TAYLOR & FLANAGAN
for appellant.

ROSCOE VANOVER and C. M. WHITT for appellee.

(No briefs—Case out of clerk's office.)

OPINION OF THE COURT BY JUDGE O'REAR—Affirm-
ing.

Appellee, a coal miner was injured by falling slate
while working in appellant's mine in West Virginia.
It is conceded that appellant's liability is to be tested

by the laws of that state then in force. It is charged
in the petition in this case that appellant had negli-
gently employed and retained in its service, for some
days before and at the time of appellee's injury, an
incompetent mine boss, who negligently failed to in-
spect the roof of the mine from which the slate fell
that injured appellee, and who failed to furnish ap-
pellee sufficient or suitable props to support the roof,
as a result of which the injury occurred. It is con-
ceded that in West Virginia the mine boss and the
miners are fellow servants. Still the law there is,
as it is elsewhere, that one servant does not assume
the risk arising from the negligence of a fellow ser-
vant if the master was negligent in the selection and
employment of a laborer who was incompetent to do
the work which he was put to do. As to the qualifi-
cations of a mine boss a statute of West Virginia thus
provides (section 410, W. Va. Code Supp. 1907):
"Sec. 15. In order to better secure the proper venti-
lation of every coal mine and promote the health and
safety of the persons employed therein, the operator
or agent shall employ a competent or practical in-
side overseer, to be called mine foreman, who shall
be a citizen of this state and an experienced coal
miner, or any person having five years' experience
in a coal mine, who shall keep a careful watch over
the ventilating apparatus and the airways, traveling-
ways, pumps, and drainage, and shall see that as the
miners advance their excavations, proper break-
throughs are made, to properly ventilate the mine,
and that all loose coal, slate and rock overhead in the
working places and along the haulways be removed
or secured so as to prevent danger to persons em-
ployed in such mines; and that sufficient props, caps

and timbers as nearly as possible of suitable dimensions, are furnished for the places where they are to be used, and such props, caps and timbers shall be delivered and placed at such points as the rules for the government of each respective mine provides for them to be delivered; and every workman in want of props, caps pieces and timber shall notify the mine foreman, or such other person who may be designated·for that purpose, at least one day in advance giving the length and number of props or timbers and cap pieces he requires; but in case of an emergency the timbers may be ordered immediately upon the discovery of any danger; and it shall be the duty of each miner to properly prop and secure his place in order to make the same secure for him to work therein. The said mine foreman shall have all water drained and hauled out of the working places where the same is practicable, before the miners enter and said working places kept dry as far as practicable while the miners are at work; it shall be the duty of the mine foreman to see that the cross-cuts are made as required by law and that ventilation shall be conducted through said cross-cuts into the rooms by means of check doors placed on the entries or other suitable places, and he shall not permit any room to be opened in advance of the ventilation current. Should the mine inspector discover any room, entry, airway or other working places being driven in advance of the air current contrary to the requirements of this act he shall order the workmen working such places to cease work at once until the law is complied with. And the mine foreman shall measure the air current at least twice each month at the inlet and outlet and at or near the faces of the advanced head-

ings and shall keep a record of such measurements in a book having a form prescribed by the chief of the department of mines. An anemometer shall be provided for this purpose by the operator of the mine.''

The regular mine foreman, who is sometimes called the mine boss, became- sick some days before appellee's injury. He. turned over the superintendency of the mine to the track repairer, the next in rank. Appellant's general superintendent came along in a day or so, and learned that the mine had been placed under this track layer. He went to see the regular mine foreman about it, who told him that this man was careless and otherwise incompetent, and advised him to employ another man who was recommended as having more experience. But the superintendent says that he knew there was not a good feeling between the old foreman and the track layer, and exercised his own judgment in the matter, after looking into his work. The new foreman had been employed at this mine but a short time, probably a month or so, and was but a mere youth, about 20 years old. The evidence leaves no doubt that he was not sufficiently experienced to be a competent mine foreman. He did not inspect the miners' rooms to see as to their condition; he did not sound the roofs and walls, and did not see to other matters which were necessary in insuring the safety of the men; he did not promptly furnish, or require to. be furnished, to the miners the props called for by them, and which were necessary in shoring up the roof where they were working; he did not know the name or use of some of the instruments required by the law for testing the air in the mines. There was evidence that this young man had been working in and about coal mines for 8 or 10

years—since he was a child. Probably he had mined coal for as long as 5 years. The West Virginia statute quoted we think contemplated the employment of competent, practical mine foremen. It was not so material whether they had spent many years in mines if they were competent to be foremen. But we are not told that the state required an examination by a board of miner's, or by the chief of the State Department of Mines, as to their efficiency. Competency was the point aimed at, however. The statute assumes that one who has had 5 years' experience in a coal mine is presumably competent to be a mine foreman. But we cannot think the Legislature of West Virginia, evincing such care as was done in the elaborate system of mine inspection and regulation in the statute before us, from which the foregoing quotation is made, intended to allow mine operators to knowingly employ incompetent foremen merely because the latter may have had 5 years' experience in coal mines. On the contrary, we think it was intended that only competent, practical mine foremen should be employed. If the foremen were known to be competent, they might be employed under this statute without reference to their experience; but, if they were not known to be competent, the employer might assume, from their having had 5 years' experience in coal mines, that they were competent until the contrary was brought to his knowledge. But if they were known to be incompetent, their employment was negligence, no matter what experience they may have had. In the petition in this case it was not charged in terms that the young man, employed by appellant as foreman at the time of appellee's injury, had not had 5 years' experience in coal mines, al-

though it was charged that he was incompetent, and was known by appellant to be so. It is claimed that the omission to charge that the foreman had not had 5 years' experience made the petition deficient. But, construing the statute as we have above, we hold that the allegation was sufficient. Besides, an issue was joined on the allegation as made, the proof covered both phases of the statute, as did the instructions of the court, and the verdict for appellee necessarily cured the error in the pleading, if there had been the error now claimed by appellant. Hill v. Ragland, 114 Ky. 209, 70 S. W. 634.

Appellant contends that the proximate cause of appellee's injury was his failure to prop his roof, or to inspect it after he had shot the blast of coal from the face of the room near where the roof fell. As to the first proposition appellee testified, as did his brother who was working with him, that he had for several days been requesting the mine foreman to send them props, but he had failed to do so. The foreman admits the request, but not as frequently as appellee claims it was, and excused his failure by saying he had directed another employe to bring in the posts; also that there were some posts lying near, about 50 or 60 feet away, which appellee might have used. Appellee says that the last-named posts were too long. The danger from the lack of suitable posts was actual, but not so apparent or imminent as to make it rash for one to work as appellee was doing without them. He was tempted to and did use his posts sparingly, as he had to lose his own time in pulling them from an abandoned part of the mine. It was just such temptation and hazard that miners will let themselves be subjected to that the statute

was evidently aimed to prevent. The miner does not assume the risk, unless obviously perilous, arising from the failure of the mine foreman to furnish the posts and perform the other duties imposed by the statute for the safety of the miners, and particularly is this true when such failure is due to the incompetency of the mine foreman.

Appellee did not himself examine the roof of the mine upon returning to the room after firing the last shot. But his brother, who was his "buddie," and was with him at the time, did examine it by sounding it with his pick, and it gave them no warning of its dangerous condition. This did not amount to contributory negligence. But whether it was or not, the question was one for the jury, and was submitted to them in the instructions given by the court.

Upon the whole case we fail to see any error in the record prejudicial to appellant.

The judgment is affirmed, with damages.